# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

John Polinghorn and
Gretchen Fayerweather

    Debtor(s)

**JUDGE RICHARD L. SPEER**

Case No. 10-31093

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 37). The Debtors filed a response to the Motion, objecting to the Dismissal of their case. (Doc. No. 45). A Hearing was then held on the matter. At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. (Doc. No. 46). The Court has now had the opportunity to review all of the arguments and evidence submitted in this case, and finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has Merit.

## BACKGROUND

On March 4, 2010, the Debtors, John Polinghorn and Gretchen Fayerweather, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). The Debtors also, as required by the Bankruptcy Rules, filed an Official Form B22A, entitled "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation." This form implements the requirement of § 707(b)(2)(C), requiring a debtor to perform the 'means test' calculation of § 707(b)(2) so as to determine if granting relief in the case should be presumed to be an abuse. In completing Form B22A, the Debtors, who represented that they had a combined gross annual income

In re: John Polinghorn and Gretchen Fayerweather
Case No. 10-31093

of $73,365.96, determined that no presumption of abuse arose in their case, checking then the applicable box on the Form. (Doc. No. 1).

The Debtors later filed an Amended Form B22A. (Doc. No. 17). Among the amendments set forth in this Form, the Debtors made a significant upward adjustment to their income, reporting a combined annual income of $123,135.60. Based upon this adjustment, as well as other changes made to their expenses, the Debtors determined that, according to the 'means test' formula of § 707(b)(2), a presumption of abuse arose in their case. For this calculation, the Debtors determined that they had a monthly disposable income of $1,722.76, well exceeding the abuse threshold of 195.42.[1]

On June 28, 2010, the United States Trustee (hereinafter the "UST") filed the Motion now before the Court to Dismiss this case. (Doc. No. 37). Although not recognizing the propriety of all the expenses utilized by the Debtors in their 'means test' calculation, the UST agreed with the Debtors' overall conclusion that the granting of relief in this case should be presumed to be an abuse for purposes of § 707(b)(2). The UST further maintained that the presumption of abuse had not been rebutted, thereby maintaining that "on that basis alone" this case should be dismissed. *Id.* at pg. 4. As now explained, the Court agrees.

---

[1] To perform the 'means test' calculation of § 707(b)(2), one first determines a debtor's income and then reduces that amount by those expenses permitted in the statute. 11 U.S.C. § 707(b)(2)(A). If, after performing this calculation, the debtor's remaining income, as calculated over a five-year period, satisfies one of two conditions, the granting of relief in the case is then presumed to be abusive: (1) the debtor's income is greater than $11,725.00; or (2) although less than $11,725.00, the debtor's income is greater than $7,025.00 and that amount will pay more than 25% of the debtor's unsecured debt. On a per month basis, these income thresholds total $195.42 and $117.08 respectively.

Page 2

In re: John Polinghorn and Gretchen Fayerweather
Case No. 10-31093

## DISCUSSION

This matter is before the Court on the Motion of the UST to Dismiss pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). The determination of a matter such as this, concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, is deemed to be core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As such, this Court has jurisdiction to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

Section 707(b)(1) provides for the dismissal of a bankruptcy case when it is determined that the granting of relief would be an abuse. Two methods are then prescribed in § 707(b) to assess whether "abuse" is present: (1) presumed abuse under the objective 'means test' set forth in §707(b)(2); and (2) a subjective test found in § 707(b)(3) which considers whether the debtor filed their petition in bad faith and whether the totality of the circumstances surrounding the debtor's financial situation demonstrate abuse. If either of these methods results in a finding of abuse, the case becomes ripe for dismissal under § 707(b)(1). *In re Longo*, 364 B.R. 161, 164 (Bankr. D.Conn. 2007).

In this case, the Debtors did not contest the veracity of their amended 'means test' calculation, showing that the presumption of abuse arises in their case. The Debtors, rather, in seeking to maintain their Chapter 7 bankruptcy, note that the income figures set forth in their 'means test' calculation, while accurate at the date of filing, no longer present an accurate picture of their financial situation. For example, the Debtors called attention to the fact that Mr. Polinghorn's income has declined since the filing of the petition. As such, the Debtors ask that the Court consider the realities of their financial condition when assessing whether to dismiss their case. (Doc. No. 45). On a related point, the Debtors also ask that they be allowed to expense in their 'mean test' calculation the costs necessary to service a student-loan debt as well as the costs associated with the

Page 3

In re: John Polinghorn and Gretchen Fayerweather
Case No. 10-31093

repayment of a loan taken against a retirement account. Respectively, these costs total 196.00 and $704.00 per month.

As it concerns the application of § 707(b)(2), the Debtors first point, that the Court should consider postpetition changes to their financial situation, does not comport with the methodology prescribed by the 'means test.' In short, the 'means test' calculation of § 707(b)(2) is based on a "snapshot" of a debtor's financial situation as of the petition date. Thus, postpetition changes to a debtor's income and expenses, as well as a debtor's future intentions, while possibly relevant to a determination of abuse under § 707(b)(3), are not taken into consideration when determining whether the granting of relief should be deemed to be presumptively abusive for purposes of § 707(b)(2).

This was the approach previously taken by this Court in *In re Haar*, 360 B.R. 759 (Bankr. N.D.Ohio 2007), when, after examining the matter in-depth, it was determined that the 'means test' of § 707(b)(2) is a strict mechanical test, designed to present a snapshot of the debtor's financial situation as of the date the bankruptcy case if commenced. In addition, nearly all reported decisions which have had occasion to address this issue have reach the same result. *See, e.g., Fokkena v. Hartwick*, 373 B.R. 645, 655 (D.Minn.2007) ("the means test is aimed at capturing a 'snapshot' of the debtor's financial state as of the date the petition is filed," rather than at constructing a forward-looking analysis of the debtor's financial situation."); *In re Rudler*, 388 B.R. 433, 438 (1st Cir. B.A.P. 2008) (when applying § 707(b)(2), a "'snap-shot' of the debtor's situation as of the petition date is a more appropriate approach, given the plain language of the statute."); *In re Maya*, 374 B.R. 750, 753 (Bankr. S.D.Cal.2007) ("for purposes of the 'means test' analysis of § 707(b)(2) the appropriate measuring point in time is the petition date."); *In re Lindstrom*, 381 B.R. 303, 308 (Bankr.D.Colo.2007) ("means test [i]s a mechanical, backward-looking test, designed to measure the debtor's ability to fund a chapter 13 plan as of the petition date."); *In re Norwood-Hill*, 403 B.R. 905, 910 (Bankr.M.D.Fla.2009) ("Congress chose to base the means test on historic income and expense figures that are in effect on the petition date, as opposed to figures that may change with the

Page 4

In re: John Polinghorn and Gretchen Fayerweather
Case No. 10-31093

passage of time or with a change in the debtor's lifestyle."); *In re Perelman*, 419 B.R. 168, 175 (Bankr. E.D.N.Y. 2009) ("§ 707(b)(2)(A)(iii) is patent in its calling for a "snapshot" of the debtor's obligations or circumstances on the date the bankruptcy petition was filed.").

Under the doctrine of *stare decisis*, a court, in the absence of any intervening change in the law or some other compelling reason, such as an obvious or manifest error in the precedent, is to abide by a principle of law laid down in a past decision to a present case having substantially the same facts. *Irby v. Preferred Credit (In re Irby)*, 359 B.R. 859, 861 (2007). In this case, the Debtors did not offer any substantive reason as to why the "snapshot" approach is not proper when performing the 'means test' calculation under § 707(b)(2). Accordingly, postpetition changes to the Debtors' financial situation will be disregarded in assessing the existence of abuse under § 707(b)(2).

In addition to the postpetition changes that have occurred to their financial situation, the Debtors also asked that they be allowed to expense in their 'means test' calculation monthly payments they make to service a student-loan debt as well as to repay a loan taken against a retirement account. Together, these payments total $900.00 per month.

As just stated, the 'means test' is an objective, mechanical test. In this way, the expenses allowed by a debtor in the 'means test' formula of § 707(b)(2) are fixed by statute, and in many instances are set without regards to what may constitute a debtor's true monthly expenditures. The test, therefore, may not comport with the reality of a debtor's financial situation.

The 'means test,' however, does constitute an explicit Congressional determination as to the reasonable level of financial resources a debtor, who seeks to completely discharge their unsecured debts, may devote for their own needs and at the expense of their unsecured creditors. It is also true that the "common theme in the Supreme Court's bankruptcy jurisprudence over the past two decades is that courts must apply the plain meaning of the Code unless its literal application would produce

Page 5

a result demonstrably at odds with the intent of Congress." *In re Lee*, 530 F.3d 458, 470 (6th Cir. 2008) (listing Supreme Court decisions). As such, this Court is without authority to permit a debtor to expense on the 'means test' an expenditure which is not expressly allowed by statute. *See In re Marshall*, 407 B.R. 1, 7 (Bankr. D.Mass.2009) ("the expense side of the disposable income equation is not susceptible to the realistic approach."); *In re Styles*, 397 B.R. 771, 773 (Bankr. W.D.Va. 2008) ("When determining the proper monthly expenses a debtor may claim, courts should not supplement their discretion for the explicit language of 11 U.S.C. § 707(b)(2)(A)(ii)(I).").

For this purpose, nothing indicates that Congress meant to include in the 'means test' calculation expenses associated with student loans; the same is also true for expenses needed to repay a loan taken against a retirement account. 11 U.S.C. § 707(b)(2)(A)(ii). Exemplifying this fact are the allowable deductions listed on Form B22A. First, nowhere on Form B22A is a debtor instructed to take a deduction for an educational debt. Also, on line 26 of the Form, where a debtor is instructed to expense involuntary deductions for employment, it is provided in bold: "Do not include discretionary amounts, such as voluntary 401(k) contributions." The Debtors' position, that loan repayments to retirement accounts are involuntary, has been rejected by this Court. *In re Speith*, 427 B.R. 621, 625-26 (Bankr. N.D.Ohio 2009) (providing a complete discussion).

Notwithstanding, while the 'means test' formula itself is not subject to modification, adjustments to the 'means test' calculation are permissible when a debtor seeks to rebut the presumption of abuse. Section 707(b)(2)(B) sets forth the requirements necessary to rebut a presumption of abuse which arises under the 'means test' formula. This provision begins by providing:

> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional

In re: John Polinghorn and Gretchen Fayerweather
Case No. 10-31093

expenses or adjustments of current monthly income for which there is no reasonable alternative.

The key language of this provision is whether a debtor can establish the existence of "special circumstances."

Section 707(b)(2)(B) provides two examples of conditions which may constitute "special circumstances": (1) a serious medical condition; or (2) a call or order to active duty in the Armed Forces. No suggestion was made by the Debtors that either of these conditions are applicable in their case, however. Even so, this list is not exclusive, and "special circumstances" may still exist even in the absence of a serious medical condition or call to active duty in the Armed Forces. Yet, in the absence of one of these conditions, this Court has held that "special circumstances" will normally involve circumstances beyond the debtor's reasonable control, or result form circumstances highly unusual in character and of the type not normally encountered by most debtors. *In re Smith*, Slip Copy, 2010 WL 3270019 *3 (Bankr. N.D.Ohio 2010); *In re Conlee*, Slip Copy, 2010 WL 3210974 *6 (Bankr. N.D.Ohio 2010).

Within this framework, neither the Debtors' student-loan payment nor their repayment of a loan taken against a retirement account, may be said to constitute a 'special circumstance' for purposes of § 707(b)(2)(B). Many debtors who come before this Court have student-loan obligations. The same is true for loans taken against retirement accounts. As such, these types of obligations are commonplace and therefore cannot be said to constitute highly unusual circumstances, or the type of circumstance not normally encountered by many debtors. Such obligations are also not beyond a debtor's reasonable control. For these same reasons, the Debtor's inability to sell their former residence cannot be said to constitute a 'special circumstance.'

However, even if this were not the case, and the Debtors' payments for both a student loan and a retirement loan did constitute "special circumstances" within the meaning of § 707(b)(2)(B),

Page 7

In re: John Polinghorn and Gretchen Fayerweather
Case No. 10-31093

the presumption of abuse would still not be rebutted. Section 707(b)(2)(B) requires that the adjustment to a debtors expenses warranted by the "special circumstances" must cause the debtor's disposable income to fall below the abuse thresholds of § 707(b)(2). This would not occur in this case.

The "special circumstances" claimed by the Debtors, which they contend justify an adjustment to their expenses, total $900.00 per month. However, before any adjustment is made, the Debtors' disposable income on the 'means test' totals $1,722.76. Therefore, even based upon an adjustment of $900.00, the Debtors' revised disposable income would still total $822.76 per month, well above the abuse threshold of $195.42. This fact also brings to light a final observation.

The Debtors have a meaningful level of income, with the evidence showing that the Debtors have and will likely continue to have an annual income nearing, if not exceeding $100,000.00. In this regard, both of the Debtors are gainfully employed: Mr. Polinghorn as a Correctional Officer with the United States Department of Justice; Mrs. Fayerweather as a teacher for a local community college. The Debtors' position, that a Chapter 7 bankruptcy would be more expedient, thus, has a hollow ring where there are clearly financial resources available to the Debtors so as to afford them with the ability to repay at least a portion of their unsecured creditors.

In sum, while postpetition changes to the Debtors' financial situation may exist which will impact their ability to fund a Chapter 13 plan of reorganization, such changes are not relevant to the determination that the granting of relief in their case should be deemed to be presumptively abusive for purposes of applying the 'means test' of § 707(b)(2). In addition, this presumption has not been rebutted, with neither the Debtors' student-loan payment nor their repayment of a loan taken against a retirement account constituting a 'special circumstance' within the meaning of § 707(b)(2)(B). Accordingly, for these reasons, the Motion of the UST to Dismiss under § 707(b)(2) must be Granted.

Page 8

In re: John Polinghorn and Gretchen Fayerweather
Case No. 10-31093

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of both parties, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(2), be, and is hereby, GRANTED.

**IT IS FURTHER ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, September 13, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: August 27, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

## CERTIFICATE OF SERVICE

Copies were mailed this 27th day of August 2010 to:

Ronna Jackson ust34
201 Superior Ave. #441
Cleveland, OH 44114

Stacey A O'Stafy
Manley Deas & Kochalski LLC
PO Box 165028
Columbus, OH 43216-5028

Gretchen Marie Fayerweather
312 W. Harrison
Maumee, OH 43537-2123

Kelly O'Brien
412 Fourteenth St.
Toledo, OH 43604

Fifth Third Mortgage Company
5050 Kingsley Dr 1MOC20
Cincinnati, OH 45263

Ericka S Parker
33 S. Michigan, Suite 203
Toledo, OH 43604

John Thomas Polkinghorn
312 W. Harrison
Maumee, OH 43537-2123

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court